

FILED BY _CH_ D.C.

NOV 2 0 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES DISTRICT COURT

SOUTHERN DISRICT OF FLORIDA

TIMOTHY LEE JOHNSON

                 Plaintiff,                       CASE NO._____

                                           To be supplied by the Court

v.

BROWARD COUNTY SHERIFF,              **JURY DEMAND**

SCOTT ISRAEL and TWO UNNAMED

SHERIFF DEPUTIES ("UNSD (I & II)),

                 Defendants.

_____/

## <u>CIVIL RIGHTS COMPLAINT</u>
### <u>42 U.S.C. SECTION 1983</u>

      COMES NOW the plaintiff, Timothy L. Johnson, who is proceeding in this cause without the representation of counsel, in **pro se**, pursuant to 42 U.S.C. § 1983 of the Civil Rights Act, and respectfully invokes the rule established in *Haines v. Kerner*, 404 U.S. 519 (1972) (holding pro se litigants to "less stringent standards than those applied to attorneys"), and submit the following Memorandum of Law in Support of his complaint.

This is an action being filed under § 1983 of the Civil Rights Act ("the Act"), alleging violations of plaintiff's rights to be free un from lawful deprivation of his liberty in violation of the Florida and Federal Due Process Clauses, Art. 1, § 9, and U.S. Const. Amend. 5 and/or 14, § 1, respectively, and Amend. 4, seeking monetary damages, injunctive relief, and declaratory judgment, in addition to a **trial by jury**.

## JURISDICTION

The jurisdiction of this arises under 28 U.S.C. § 1343(3).

## PARTIES INVOLVED

1.  Plaintiff, Timothy L. Johnson, is currently residing at 4461 Melvin Circle East, Jacksonville, Florida, 32210.

2.  Defendant, Broward Sheriff, Scott Israel is located at 2601 West Broward Boulevard, Fort Lauderdale, Florida, 33311, is/was Sheriff of Broward County, Florida, and was responsible for the actions of his agents, their training, and management at all times relevant to this claim. The Sheriff is being sued in his individual and official capacities.

2

3.  Defendant, the Unnamed Sheriff Deputy (I) (Caucasian), whereby his last known address was and/or is 2601 West Broward Boulevard, Fort Lauderdale, Florida, 33311, was one of the arresting officers at all times relevant to this matter. He is being sued in his individual and official capacities for violations of plaintiff's civil and constitutional rights as stated above.

4.  Defendant, the Unnamed Sheriff Deputy (II) (African American) has the same information as alleged in paragraph 3, above, which is incorporated herein.

5.  All defendants, named and unnamed, acted under the "color of state law" during all times relevant to this matter.

6.  Defendants' conduct, at all times relevant to this matter, deprived plaintiff of basic, fundamental, civil, and constitutional rights, privileges, and/or immunities secured by both the Florida and United States Constitutions.

7.  Plaintiff, at all times relevant to this matter, was unlawfully placed in the

custody, control, and care of Defendants Scott Israel and Unnamed Sheriff Deputies

3

I and II ("UNSD (I) & (II)").

## FACTS

8.  On November 22, 2013, the plaintiff, while traveling south on N.W. 7th Avenue between N.W. 1st and 2nd Streets, the avenue upon which plaintiff then resided, encountered the defendants (UNSD (I) & (II)) and other Sheriff officials, commonly referred to as "the Raiders," who turned onto N.W. 7th Avenue behind plaintiff's vehicle, a truck with dark tinted windows.

9.  As plaintiff turned into the parking area of his residence, at 114 N.W. 7th Avenue, UNSD (I), who is believed to have been the driver of the police vehicle, followed plaintiff onto the property, exited his police cruiser, accompanied by UNSD (II), and approached plaintiff demanding him to provide a driver's license, registration, and insurance card.

10.  Plaintiff inquired, of the UNSD (I), as to the reasoning for the stop, for

which said defendant displayed displeasure, at any questioning, and directed plaintiff, in harsh terms, "don't you ask me no questions just do as you are told."

4

11. Plaintiff, then, inquired of said defendant, whether "I am being detained or under arrest for something, and if so, what?"

12. Defendant, UNSD (II), expressing extreme anger and/or frustration with plaintiff's inquiries and persistence as to the reasoning for the stop, interjected that plaintiff was "not under arrest *yet*."

13. Plaintiff, then, asserted that he wished to call his attorney, to which the UNSD (I), who had walked around to the front passenger door, reached over the passenger, to which plaintiff will call as a witness, ordered plaintiff not to dial his attorney, and abruptly *snatched* from plaintiff's hand his cellular telephone, causing its destruction. Thereafter, said defendant, (UNSD I), stated to plaintiff, "now you're under arrest."

14. Plaintiff was led from his vehicle, by UNSD (II), placed in handcuffs as

he sat on the bumper of his own vehicle while each defendant, among other police officers ("the Raiders"), ordered the passenger to exit the vehicle as they, including defendants (I & II), performed an unlawful search of plaintiff's vehicle against his protests.

5

15. Plaintiff was subsequently placed on the floor of a police vehicle, due to a previous sustained back injury, unrelated to this matter, and was transferred to the North Broward County Detention Facility in Pompano Beach, Florida, approximately fifteen, or more, miles from plaintiff's residence.

16. Once inside of the *jail*, and ordered to exchange his clothing *to wear the prison garments*, plaintiff was questioned by Booking Desk officials regarding his health, among other things.

17. Thereafter, when plaintiff was questioned by an official, who appeared to be a Lieutenant-in-charge, and asked "why are you in jail," plaintiff answering that he "don't know why;" the Lieutenant reviewed some papers, that were handed to him by another police officer, inquired of plaintiff concerning his medical condition, and, upon learning that plaintiff was diabetic, appeared to ask the

question, thinking out aloud, "why is this man in my jail," and ordered other police officers to "get this man out of my jail now."

18.   Plaintiff was then returned his personal clothing, asked whether he wish to *go home* or be taken, by police, to the *Hospital*, being plaintiff's diabetic sugar

6

was registered as overly high by jail medical staff.

19. Choosing to be returned to his residence, and informing police officials he

would later go for medical treatment, defendants released plaintiff, but *drove him back to where he was unlawfully arrested*, initially, for allegedly having [windows tinted too dark] or, as stated in the Report, "Side Wind/Rest Sunscreen [too dark];" and, subsequently, as a last effort attempt to *disguise* the unlawful arrest, a charge of Resisting/Obstructing Justice Without Violence was added, but that claim/charge, like the former one, was also *dropped/dismissed* without plaintiff ever having to defend against it, other than appearing for the judge to dismiss it with *no discussion.*

20. Upon police, defendants, returning plaintiff to his residence, the plaintiff

discovered that the defendants, in furtherance of their *scheme* to violate his Fourth, Fifth, and Fourteenth Amendment rights, had *seized his vehicle*, had it placed in police custody, for further unlawful searching, and resulted into deprivation of plaintiff's property in violation of the Constitutions, and resulted into monetary loss by plaintiff at the behest of the defendants.

7

## CLAIMS
## FIRST CAUSE OF ACTION

21. The actions of the defendant, UNSD (I), as stated in paragraphs 8-20 of

this complaint, denied and/or deprived plaintiff of his rights to be free from unreasonable restraints on his freedom, and from unreasonable searches and seizures of his property, in violation of the laws of the State of Florida, supra, and the United States Constitution, supra. The defendant knew, or should have known, that his actions were a violation of plaintiff's rights under the Florida and Federal Constitutions against the unreasonable and unlawful arrest, search, and seizure of personal property when he arrested, or caused the arrest of, the plaintiff without probable cause. Then, after doing so, plaintiff, without having probable cause to be arrested by defendant, was ordered released and be returned to his home without

the charge or allegation requiring adjudication by any court of law, or judge, except as stated above, after being unlawfully arrested. Plaintiff, thus, was *kidnapped* under the actual and perceived threat of harm.

## SECOND CAUSE OF ACTION

22. The claims asserted in paragraph 21, above, are incorporated herein, *in its*

*entirety*, as though alleged hereat, as it refers to the defendant, UNSD (II).

8

## THIRD CAUSE OF ACTION

23. The actions and/or inactions of the defendant, at all times relevant to this matter, were either the direct or indirect cause of plaintiff's unlawful harm, arrest, humiliation, kidnapping, searches and seizure of personal property, and medical difficulties. Defendant Scott Israel's knowledge of the history of abuses, in terms of his agents' unlawful acts of stopping pedestrians and/or citizens, either walking and/or driving vehicles, for the sole purpose of violating the rights of those individuals in an attempt to discover evidence of a crime, while taking no

corrective actions, makes the defendant liable for the acts of his agents under the doctrine of *respondeat superior*. *Sanders v. English*, infra.

## MEMORANDUM OF LAW
## IN SUPPORT OF CIVIL RIGHTS COMPLAINT

### ARGUMENT AND CITATION OF AUTHORITY:

The standard for determining whether a complaint states a claim upon which relief may be granted is the same whether under 28 U.S.C. §1915(e)(2)(B) or Fed. R. Civ. P. 12(b)(6) or (c). See *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of the Federal

9

Rule of Civil Procedure 12(b)(6)"). When reviewing complaints pursuant to 28 U.S.C. §1915(e)(2)(B), the Court must apply the standard of review set forth in Fed. R. Civ. P. 12(b)(6), and the Court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. In order to state a claim, a plaintiff must show that conduct under color of state law, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or

immunities under the Constitution or laws of the United States. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 (11th Cir. 1985).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state claim. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

10

## DEFENDANTS UNSD (I) & (II):

Accepting as true, as it must, the factual allegations asserted against these two defendants, in paragraphs 8-20 above, plaintiff contends that his rights, as secured by the Constitutions, were violated when the defendants, who knew or should have known, that no probable cause or reasonable suspicion existed to

*arrest* plaintiff and to search and seize his vehicle, from private property, of plaintiff's residence, for the sole purpose of conducting a warrantless search in hopes of discovering evidence of a crime.

Here, the defendants, acting on *pure speculation and/or a hunch*, that the plaintiff, who was driving a 2003 Cadillac Escalade SUV, was involved in some form of criminal conduct, approached plaintiff, who had driven onto the property of his, then, residence with the intent to search plaintiff's vehicle for evidence of a crime, presumably for narcotics, being plaintiff lived in what had been characterized, by officials, as a high drug area. This police conduct, in spite of then and now existing well-settled law—that a police officer cannot, based upon a *bare* suspicion of criminal conduct or a *hunch*, stop a person and frisk him/her in search of evidence of a crime and then justify the stop by evidence later discovered— makes these police

11

officers liable for their acts. See *Terry v. Ohio*, 392 U.S. 1 (1968).

Because, here, unlike in *Terry*, the plaintiff was not the suspect of criminal activity, but, rather, allegedly a traffic violator regarding the *window tints* possibly being "*too dark*," which, as shown below, was also a *pretext* to disguise the true

motives, the defendants had no basis in law or in fact to stop or detain/arrest plaintiff. This is shown by the fact that the plaintiff, whose only alleged basis for the *initial stop*, that would subsequently lead to the so-called "Resisting/Obstructing [Justice/Officer] Without Violence," was, indeed, the [tinted windows] charged as count two of the arrest in violation of Fla. Stat. Ordinance/Section No. 316.2953. That is, both the so-called Resisting/Obstruction of Justice and the window tint charges were **disposed** of and plaintiff released from jail hours after his unlawful and false arrest by these defendants.

The Supreme Court, in *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987), made clear that in order to overcome a claim of "qualified immunity," a civil rights plaintiff must show that the right that was allegedly violated was clearly established at the time of the defendant's conduct.

> "[Q]ualified immunity [is] defeated if an official knew or should have known that the action he took within

12

> the sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the [his] action with the malicious intention to cause a deprivation of constitutional rights or other injury... ."

*Wood v. Strickland*, 420 U.S. 308, 322, 43 L. Ed 2d 214, 95 S. Ct. 992 (1975). It was well-settled law, at the time of this occurrence, that a police officer could not arrest an ordinary citizen for, questioning an officer as to why he/she was stopped, for insisting on calling his attorney, for windows that are too dark, or for the facts of this case—which was clarified by plaintiff's subsequent release and being returned, *by the police*, to where he was initially and unlawfully arrested. This was also apparent in light of the "false arrest" lawsuits that had previously been filed against defendant Scott Israel, as shown below. The defendants, UNSD (I) & (II) are liable for the harm and injury suffered by plaintiff as a direct result of their violations of his civil and constitutional rights.

The Due Process Clause of the Florida Constitution, Art. 1, § 9, outlines the protections provided to the citizens of the State of Florida, and/or visitors thereof, by asserting that: "No person shall be deprived of life, liberty, or property without due process of law." Due process has been defined, among other things, as fairness

13

and "the principle that an individual cannot be deprived of … liberty …without appropriate legal procedures and safeguards." It includes the "*arbitrary denial of*

*liberty*," as was done to the plaintiff by these defendants. Moreover, the due process clause provides that the plaintiff, here, had every right to ask the arresting officer the reason for the traffic stop, without being subjected to a false arrest as a result thereof.

The Sixth Amendment, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, see *In re Oliver*, 333 U.S. 257, 273-74 (1948), guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of charges against him. See also, *Kulko v. Superior Court*, 436 U.S. 84 (1978) (defining due process with only one word, "fairness").

## DEFENDANT SCOTT ISRAEL:

Defendant Scott Israel is being sued in his individual and official capacities as Sheriff of Broward County, Florida, and the acts of his subordinates, defendants UNSD (I) & (II), supra, in that the defendant knew, or should have known of the unlawful tactics of the defendants in violating the rights of the People and failing to take any corrective actions or to retrain the defendants when scores of lawsuits, for

14

false arrest, has clearly placed the defendant on proper notice of the violations of citizens rights by his agents.

This defendant, Israel, has previously been in these shoes regarding the *unlawful arrest by his agents*, but has, obviously, failed to rectify the wrongdoings by turning a blind eye. This is demonstrated by a lawsuit filed against him by attorney *Gary Kollin v. Sheriff [Scott Israel]* for "false arrest," (citation to be supplied); *Jorge Rodriguez & Maria Rentel v. Sheriff [Scott Israel]*, for "false arrest," Case No. 11-61776-cv-WJZ (settled for $350,000); and *Augello v. Sheriff [Scott Israel]*, for "false arrest," Case No. 0:2012-cv-61240, among others. Yet, defendant Israel has a *de facto* policy of covering up police misconduct by failing to properly investigate officers alleged misconduct. The acts of the defendant create, tolerates, and causes a pattern of misconduct by his agents, as shown in the instant case with the plaintiff's unlawful arrest and subsequent release with being formally charged. The defendant, despite the numerous lawsuits filed against him as a result of his agents' unlawful arrests, refuses to retrain them, or to discipline them for their wrongs, which certainly does encourage these continuous civil and/or constitutional

15

violations of rights.

The language of §1983 requires a degree of causation as an element of individual liability, but it does not specifically require "personal participation." Personal participation is only one of several theories which can be used to established causation. Whether the complaint adequately alleges the requisite causal connection between the supervisory defendants' actions and a deprivation of the plaintiff's constitutional rights is the proper question. See *Anderson v. Nosser*, 456 F. 2d 835 (5th Cir.), cert. denied, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed. 2d 89 (1972).

Another theory which includes the requisite causation is that a supervisory defendant is subject to §1983 liability when he breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury. See generally, *Roberts v. Williams*, 456 F. 2d 819 (5th Cir.), cert. denied, 404 U.S. 866, 92 S.Ct. 83, 30 L. Ed 2d 110 (1971); see also, *Beverly v. Morris*, 470 F. 2d 1356 (5th Cir. 1972); and *Chestnut v. City of Quincy*, 513 F. 2d 91 (5th Cir. 1975), where the Court held the Police Chief responsible for the conduct of his subordinates where

he had notice of the past incidents and failed, as here, to prevent a reoccurrence. Finding the misconduct properly states a claim against the [Sheriff] under §1983.

16

Needless to say, the law is clear that "false arrest," "illegal detention," "false imprisonment," and "malicious prosecution," are all recognized as causes of action under §1983. See, for example, *Sanders v. English*, 950 F. 2d 1152 (5th Cir. 1992). On these basis, the plaintiff contends that he was the victim of a false arrest, illegal detention, or a kidnapping, all causing harm, humiliation, embarrassment, loss of finances, and further damage to his reputation that, itself, was/is unlawful.

## **REQUESTED RELIEF**

1. **DECLARATORY JUDGMENT** that the actions and/or inactions of

   each

defendant, as described above, violated plaintiff's rights to be free from unlawful deprivation of his liberty, freedom, by being arrested by defendants on November 22, 2013; by being deprived of his property without due process of law, causing him to be without it as well as the loss of finances in paying to have it towed and released, in addition to the hardship imposed upon his fiancé for not having transportation for said period.

2. COMPENSATORY DAMAGES in the following amounts:

    (a) $500,000.00 against **each** UNSD (I) &(II) for pain, suffering, financial losses, embarrassment, humiliation, and false arrest;

17

    (b) $500,00.00 against Sheriff Scott Israel, for pain, suffering, financial losses, embarrassment, humiliation, and false arrest;

3. PUNITIVE DAMAGES in the following amounts:

    (a) $1,000,000 against **each** UNSD (I) & (II), as well as against Sheriff Scott Israel, to prevent future occurrences and to send A message that this type of misconduct will not be condoned.

4. Any further and other relief to which the plaintiff is or may be entitled.

Respectfully submitted,

*Timothy L Johnson*

Timothy L. Johnson- **Pro se**

4461 Melvin Circle East

Jacksonville, Florida, 32210

SUBSCRIBED AND SWORN BEFORE
ME, A NOTARY PUBLIC, ON THIS
_____ 17 DAY OF __10__ 20_17_

*Joyce Anderson*

NOTARY PUBLIC IN AND FOR

THE STATE OF FLORIDA

JOYCE ANDERSON
Notary Public - State of Florida
Commission # FF 932028
My Comm. Expires Oct 29, 2019

My Commission Expires On:

_10 29-2019._

Notary Public   Joyce Anderson

18

**FROM:**

Timothy Lee Johnson
4751 Melvin Circle East
Jacksonville, Fla, 32210

**TO:**

Clerk Of The Court
U.S. District Court
Southern District of Fla
299 E. Broward Blvd
Ft. Lauderdale, Fla. 33301

J.S. Marshal Service
PAYED

Origin: 32244
Destination: 33301
3 Lb 14.00 Oz
Nov 16, 17
114410210-07

**P**

**US POSTAGE PAID**

**PRIORITY MAIL 2-Day ®**

**$7.25**

1000

Expected Delivery Day: 11/20/2017

C019

**USPS TRACKING NUMBER**

9505 5124 7208 7322 1371 13