UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-62291-ALTMAN

TIMOTHY LEE JOHNSON,

      Plaintiff,

      v.

BROWARD COUNTY SHERIFF,
SCOTT ISRAEL, and DEPUTY
JUSTIN AUGUSTUS, and
DEPUTY TIMOTHY METZ,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATION TO DISTRICT JUDGE</u>

THIS CAUSE is before the Court upon Defendants' Broward County Sheriff Scott Israel and Deputies Augustus and Metz's Renewed Motion to Dismiss (ECF No. 37) (the "Motion"). United States District Judge Kathleen M. Williams referred the Motion to the undersigned for a Report and Recommendation.[1] *See* (ECF No. 39).

After due consideration of the record, the Motion, Plaintiff's Response (ECF No. 45), and being otherwise fully advised on the matter, the undersigned recommends that the Motion be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

## I.    <u>PROCEDURAL BACKGROUND AND AMENDED COMPLAINT</u>

On November 20, 2017, Plaintiff Timothy Lee Johnson, proceeding without counsel, filed a civil rights complaint under 42 U.S.C. § 1983 ("§ 1983") against Broward County Sheriff Scott Israel ("Sheriff Israel") and two unnamed Sheriff Deputies. *See generally* (ECF No. 1). Following a motion to dismiss by Defendants (ECF No. 16) and Plaintiff's cross motion to Amend the Parties'

---

[1] On April 11, 2019, this case was reassigned to U.S. District Judge Roy Altman for all further proceedings, but the referral of the Motion remains unchanged. *See* (ECF No. 46).

Identity (ECF No. 18), the Court allowed Plaintiff to file an Amended Complaint. *See* (ECF Nos. 22, 29). Thereafter, on October 29, 2018, Plaintiff filed an Amended Complaint against Sheriff Israel and Deputies Justin Augustus and Timothy Metz (the "Deputies") (and together with Sheriff Israel, "Defendants").[2] *See generally* (ECF No. 33). The following allegations are taken from the Amended Complaint. *Id.*

Plaintiff alleges that on November 22, 2013, while Plaintiff was driving a truck with dark tinted windows, Deputies Augustus and Metz[3] stopped Plaintiff in the parking area of his residence. *Id.* ¶¶ 8-9. The Deputies approached Plaintiff's car and requested Plaintiff's license, registration, and insurance card. *Id.* ¶ 9. When Plaintiff asked the Deputies why he was stopped, Defendant Augustus "displayed displeasure" and said to Plaintiff: "[D]on't you ask me no questions[,] just do as you are told." *Id.* ¶ 10. Plaintiff then asked whether he was being detained or arrested, and if so, why. *Id.* According to the Amended Complaint, Deputy Metz interjected, showing "extreme anger and/or frustration" at Plaintiff's questions and told Plaintiff he was "not under arrest yet." *Id.* ¶ 11.

Plaintiff then told the Deputies that he wanted to call his attorney. *Id.* ¶ 12. In response, Defendant Augustus walked to the front passenger door of the truck, reached over an unnamed passenger, and "abruptly snatched" the phone from Plaintiff's hand, causing the phone to break. *Id.* Defendant Augustus then advised Plaintiff that he was under arrest. *Id.*

Thereafter, Defendant Augustus handcuffed Plaintiff and ordered the unnamed passenger to exit the truck. *Id.* ¶ 13. While Plaintiff sat on the bumper, the Deputies unlawfully searched

---

[2] In the Amended Complaint, Plaintiff identifies the Deputies by partial names and badge numbers. (ECF No. 33 at 1, 2-3). Defendants note the partial identification in their Motion, but do not challenge Plaintiff's allegations regarding their identities. *See* (ECF No. 37 at 2).

[3] Although the Amended Complaint misspells Deputy Metz's name, the Motion confirms the correct spelling. *Compare* (ECF No. 33) *with* (ECF No. 37).

Plaintiff's truck over his objection.  *Id.*  Plaintiff was then placed in the police car and taken to North Broward County Detention Facility.  *Id.* ¶ 14.

At the jail, Plaintiff changed into a prison uniform and was questioned by booking desk officials, who inquired about Plaintiff's health.  *Id.* ¶ 15.  An officer appearing to be a Lieutenant asked Plaintiff why he was in jail, to which Plaintiff replied that he did not know.  *Id.* ¶ 16.  The Lieutenant then learned that Plaintiff was diabetic and ordered officers to "get [Plaintiff] out of my jail now."  *Id.*  Plaintiff's clothing was returned and, because medical staff had found Plaintiff's sugar levels were high, Plaintiff was asked whether he wanted to go home or to the hospital.  *Id.* ¶ 17.  Plaintiff chose to return home and officers drove Plaintiff back to the parking lot where he had been arrested.  *Id.* ¶ 18.

Upon returning home, Plaintiff learned that the Deputies had seized his car and unlawfully searched it.  *Id.* ¶ 19.  Plaintiff alleges that he was charged with "Side Wind/Rest Sunscreen [too dark]" and Resisting/Obstructing Justice Without Violence.  *Id.* ¶ 18.  A judge subsequently dismissed the charges.  *Id.*

Based on these allegations, Plaintiff asserts three § 1983 civil rights causes of action against Defendants.  *See generally* (ECF No. 33).  Specifically, in the first cause of action (Count I), Plaintiff incorporates the factual paragraphs of the Amended Complaint and alleges that Defendant Augustus deprived Plaintiff of his right to be free from "unreasonable restraints," "unreasonable searches and seizures of his property," and "unreasonable, unlawful arrest . .  without probable cause.'"  (ECF No. 33 at ¶ 20).  In the second cause of action (Count II), Plaintiff incorporates the allegations made against Defendant Augustus as claims against Defendant Metz.  *Id.* ¶ 21.  Lastly, the third cause of action (Count III) alleges claims against Defendant Sheriff Israel under the doctrine of *respondeat superior* and for having knowledge of abuses relating to the unlawful acts of his agents in "stopping pedestrians and/or citizens . . . for the sole purpose of violating the rights

of those individual's in an attempt to discover evidence of a crime." *Id.* ¶ 22.  Plaintiff's Amended

Complaint also includes a Memorandum of Law.  *Id.* at 11-21.

Defendants move to dismiss the Amended Complaint with prejudice.  *See generally*

(ECF No. 37).

## II.    LEGAL STANDARD FOR PLEADINGS AND MOTIONS TO DISMISS

Plaintiff is proceeding in this action without counsel.  Pleadings of pro se litigants are held

to less stringent standards than those drafted by an attorney.  *Erickson v. Pardus*, 551 U.S. 89, 94

(2007); *see also Coffield v. Broward Cty. Jail,* No. 17-CV-61366, 2017 WL 3600942, at *4 (S.D.

Fla. July 21, 2017), *report and recommendation adopted sub nom. Coffield v. Broward Cty. Main

Jail,* 2017 WL 3623677 (S.D. Fla. Aug. 22, 2017) (noting that pro se complaints are held to a less

stringent standard than formal pleadings and can only be dismissed for failure to state a claim if it

appears beyond doubt that plaintiff can prove no set of facts in support of his claim).  Nonetheless,

pro se litigants must meet minimal pleading standards.  *Jones v. Moore*, No. 07-CV-21154, 2008

WL 384557, at *1 (S.D. Fla. Feb. 11, 2008) (citation omitted).  Courts are not allowed to "serve

as *de facto* counsel or to rewrite an otherwise deficient pleading in order to sustain an action."

*Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011).  Furthermore, pro se

litigants must follow the court's procedural rules.  *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th

Cir. 2002).

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Although a complaint "does not need detailed factual allegations," it must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Moreover, the Court's review of the sufficiency of the complaint is limited to the allegations presented in the Amended Complaint and the exhibits attached thereto. *See GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations in the complaint are to be accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly,* 550 U.S. at 555. Conclusory allegations, unwarranted factual deductions, or legal conclusions will not prevent dismissal. *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (citation omitted). Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

### III.   DISCUSSION

Defendants move to dismiss the Amended Complaint on several grounds. *See generally* (ECF No. 37). First, Defendants argue that the Amended Complaint fails to properly allege municipal liability against Sheriff Israel and the Deputies in their official capacities. *Id.* at 5-8. As to Sheriff Israel, Defendants also argue that Plaintiff fails to establish supervisory liability for the Deputies' alleged misconduct. *Id.* at 8-9. As to the Deputies, Defendants assert that the

Deputies are entitled to qualified immunity on the claims brought against them in their individual capacities. *Id.* at 9-11. Next, Defendants allege that the Amended Complaint is an improper shotgun pleading. *Id.* at 11-13. Lastly, Defendants challenge Plaintiff's request for punitive damages. *Id.* at 13-15. For the reasons discussed below, the undersigned recommends that the Motion be granted in part and denied in part.

### A.    The Amended Complaint is not a Shotgun Pleading

The undersigned will first address Defendants' assertion that the Amended Complaint is an impermissible shotgun pleading that should be dismissed on procedural grounds. *See* (ECF No. 37 at 11-13). Shotgun pleadings fail to give a defendant adequate notice of the claims against him and the grounds upon which each claim rests. *Vibe Micro Inc. v. Shabanets,* 878 F.3d 1291, 1295 (11th Cir. 2018). More specifically, the Eleventh Circuit has identified four types of pleading deficiencies as shotgun pleadings: (i) complaints containing "multiple counts where each count adopts the allegations of the preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (ii) complaints "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (iii) complaints that do not separate each cause of action or claim for relief into a different count; and (iv) complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (collecting cases on pleading deficiencies considered shotgun pleadings). Plaintiffs who file shotgun pleadings are generally given an opportunity to remedy the deficient pleading. *Vibe Micro,* 878 F.3d at 1295; *see also Phillips v. City of W. Palm Beach*, No. 18-CV-80172, 2018 WL 3586179, at *4 (S.D. Fla. July 26, 2018) (granting leave to amend a shotgun complaint that had previously been amended to add defendants).

6

Defendants argue that Counts I and II against the Deputies are "text-book" examples of a shotgun pleading in that Plaintiff realleges in Counts I and II the allegations of paragraphs 8-20.[4] (ECF No. 37 at 12).  Defendants further argue that the Amended Complaint "incorporates factual allegations into various counts, often lumps defendants together in undifferentiated allegations and consolidates multiple legal theories into a single count."  *Id.* at 13.  In response, Plaintiff asserts that each cause of action identifies the violation and the individual defendant with sufficient specificity to place each defendant on notice of the allegations against him.  (ECF No. 45 at 16).

Against this backdrop, Plaintiff's incorporation of paragraphs 8 through 20 to both Counts I and II is not a shotgun pleading.  Rather, as Plaintiff points out, because the factual allegations against the Deputies concerning the events of November 22, 2013 are intertwined and apply equally to both Deputies, Plaintiff could properly incorporate the factual allegations into Count I (against Deputy Augustus) and into Count II (against Deputy Metz).  *See* (ECF No. 33 ¶¶ 20-21). Count III is a separate cause of action against Sheriff Israel and does not expressly incorporate the prior paragraphs.  *Id.* ¶ 22.  Although the Amended Complaint could have been more artfully drafted, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008).  The undersigned has reviewed the Amended Complaint and finds no extraneous allegations in the individual counts. *Cf. Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (concluding that shotgun complaint incorporating allegations of predecessor counts left the court with the onerous task of sifting through irrelevancies).  Indeed, as Plaintiff correctly notes

---

[4] The Motion and Plaintiff's response to the Motion reference paragraphs "8-19," but the Amended Complaint actually realleges paragraphs "8-20."  *Compare* (ECF No. 33 ¶¶ 20-21) *with* (ECF Nos. 37 at 12 n.2, 45 at 14).  Additionally, contrary to Defendants' interpretation that Plaintiff meant to refer to "paragraphs 1-19," *see* (ECF No. 37 at 12 n.2), Plaintiff confirms that he intended to incorporate only the factual paragraphs into Counts I and II.  (ECF No. 45 at 14).

in response to the Motion, Defendants were able to articulate and mount a defense to the Amended Complaint.  (ECF No. 45 at 16).  Thus, "this is not a situation where a failure to more precisely parcel out and identify facts relevant to each claim materially increased [Defendants'] burden of understanding the factual allegations underlying each count."  *Weiland*, 792 F.3d at 1324.  Moreover, when scrutinized under the lesser pleading standard for pro se litigants, *Haines v. Kerner,* 404 U.S. 519 (1972), the Amended Complaint sufficiently specifies who is being charged with what actions.  Accordingly, the undersigned finds that the Amended Complaint is not a shotgun pleading.

### B.  Qualified Immunity Bars Liability Against the Deputies on Two Potential Claims Within Counts I and II

Counts I and II of the Amended Complaint allege claims against the Deputies in their individual capacities.[5]  (ECF No. 33 ¶¶ 3-4, 20-21).  Defendants argue that the individual capacity claims should be dismissed because the Deputies are protected by qualified immunity.  *See generally* (ECF No. 37 at 9-11).  The doctrine of qualified immunity shields government officials from liability in their individual capacities while performing discretionary job-related functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (citation and quotation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Questions of qualified immunity must be resolved "at the earliest possible stage in litigation" because it is an entitlement to avoid facing the burdens of litigation.  *Gonzalez*, 325 F.3d at 1233; *Pearson*, 555 U.S. at 231-32 (noting that the qualified immunity doctrine was meant to ensure that

---

[5] The undersigned's analysis in this Section focuses on the individual capacity claims against the Deputies and their assertion of qualified immunity.  Defendants, however, also challenge Plaintiff's official capacity claims against the Deputies.  *See generally* (ECF No. 37 at 5-8).  For the same reasons discussed below with regard to Sheriff Israel, the undersigned finds that Plaintiff has failed to sufficiently allege official capacity liability against the Deputies.  *See infra* Section C.1.  Accordingly, Plaintiff's official capacity claims against the Deputies should be dismissed.

'unsubstantial claims' against government officials would be resolved prior to discovery and at the earliest possible stage in litigation). Thus, it is appropriate for a district court to "grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Gonzalez*, 325 F.3d at 1233 (citation omitted).

### 1. The Deputies Acted Within Their Discretionary Authority

To receive qualified immunity, government officials must first prove they were acting within their discretionary authority. *Gonzalez*, 325 F.3d at 1234; *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005); *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). In determining whether a defendant is acting within his discretionary authority, courts assess whether the defendant's acts fall within his job responsibilities. *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004). The inquiry focuses on "whether a government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), [and] (b) through means that were within his power to utilize." *Holloman*, 370 F.3d at 1265.

Once a defendant has established that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is inappropriate. *Gonzalez,* 325 F.3d at 1234; *Dalrymple*, 334 F.3d at 995. At that point, the plaintiff must prove that: (i) the officer's conduct violated a constitutional right; and (ii) the constitutional right was clearly established at the time of the alleged unlawful act. *Pearson*, 555 U.S. at 232 (noting that qualified immunity is applicable unless defendant's conduct violated a clearly established constitutional right); *Jackson v. Humphrey,* 776 F.3d 1232, 1242 (11th Cir. 2015) (concluding that officials were entitled to qualified immunity where the conduct was lawful); *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (noting that the burden shifts to the plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already

clearly established at the time of the violation.").  In conducting the two-step analysis, district courts have discretion to determine which of the prongs to address first in light of the circumstances of each case.  *Pearson*, 555 U.S. at 236.

Here, although the Amended Complaint is not a model of clarity, it contains several potential claims of alleged constitutional violations.  For example, Plaintiff alleges: (i) an unlawful stop of his truck, *see* (ECF No. 33 ¶¶ 8-10) (alleging that the Deputies followed Plaintiff's truck, which had dark tinted windows, and demanded to see Plaintiff's driver's license, registration, and insurance); (ii) an unlawful arrest, *see id*. ¶¶ 20-21 (alleging that the Deputies' actions were "a violation of plaintiff's rights under the Florida and Federal Constitutions against the unreasonable and unlawful arrest, search, and seizure of personal property without probably cause"); and (iii) an unlawful search and seizure of his truck, *see id*. ¶¶13, 19, 20-21 (alleging that the Deputies "seized [Plaintiff's] vehicle," and "placed it in police custody, for further unlawful searching").  Under the instant facts, each of the alleged acts (i.e., the truck stop, Plaintiff's arrest, and the searches of Plaintiff's truck), undoubtedly fall within the Deputies' discretionary authority.  *See, e.g.*, *Sevostiyanova v. Cobb Cty.,* 484 Fed. Appx. 355, 357 (11th Cir. 2012) (noting that a police officer acts within his discretionary authority when he effects an arrest); *Arizona v. Gant,* 556 U.S. 332, 339 (2009) (acknowledging that, under certain circumstances, officers may conduct warrantless search of a vehicle incident to a lawful arrest).  Consequently, the burden shifts to Plaintiff to show that the Deputies' conduct violated a constitutional right that was clearly established at the time of the alleged unlawful act.  *Sevostiyanova*, 484 Fed. Appx. at 356.

### 2.  *Whether the Deputies Violated a Clearly Established Constitutional Right*

As noted above, Plaintiff alleges three general claims: (i) an unlawful vehicle stop, *see* (ECF No. 33 ¶¶ 8-10); (ii) an unlawful arrest, *see id*. ¶¶ 13-16, 20-21; (iii) and an unlawful search

and seizure of his truck, *see id*. ¶¶13, 19, 20-21.  Each claim is evaluated below to determine whether the Deputies' conduct may have violated a clearly established constitutional right.

> a.  *The Vehicle Stop*

The undersigned finds that the Deputies are entitled to qualified immunity on Plaintiff's claim of an unlawful stop.  First, Plaintiff does not dispute that the truck he was driving had "dark tinted windows."  (ECF No. 33 ¶ 8).  Florida law § 316.2953 provides restrictions on sunscreening material and specifically prohibits sunscreening or other product that makes a car window nontransparent, increases its reflectivity, reduces its light transmittance, or which alters the windows' color.  Fla. Stat. § 316.2953 (2019).  Although Plaintiff is correct that a violation of § 316.2953 is a noncriminal traffic infraction, it remains punishable as a nonmoving violation.  *Id.*  Accordingly, under Plaintiff's version of the facts, the Deputies had *arguable* probable cause, which is a lesser standard than probable cause, to stop Plaintiff for having improper window tints on his truck.  *Jones v. Cannon,* 174 F.3d 1271, 1283 n.3 (11th Cir. 1999).  Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Deputies could have believed that probable cause existed to stop the truck.  *Lee*, 284 F.3d at 1195.  In determining whether arguable probable cause exists, courts "apply an objective standard, asking 'whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation.'" *Id*.

Against this background, Plaintiff's allegations regarding the Deputies' possible ulterior motive for stopping his truck, including the Deputies' reputation as "The Raiders," (*see* ECF No. 33 ¶ 8), are insufficient to meet Plaintiff's burden to show that the stop was a constitutional violation.  Accordingly, because Plaintiff has failed to sustain his burden to show that the truck stop was unconstitutional, this claim against the Deputies should be dismissed.

b.  *Plaintiff's Arrest*

Plaintiff also alleges that the Deputies conducted an unlawful arrest.   (ECF No. 33 ¶¶ 13-16, 20-21).   As noted above, the qualified immunity analysis requires the Court to determine whether the Deputies had arguable probable cause to arrest Plaintiff.   *Lee*, 284 F.3d at 1195; *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558 (11th Cir. 1993) (noting that an officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed) (citation and quotation omitted).   In making this determination, courts focus on whether the officer's actions are objectively reasonable.   *Lee*, 284 F.3d at 1195.

The Amended Complaint alleges that after the Deputies stopped his truck, the Deputies approached Plaintiff and demanded his license, registration, and insurance card.   (ECF No. 33 ¶ 9). Plaintiff then asked why he was stopped and was told not to ask questions.   *Id.* ¶ 10.   Nonetheless, Plaintiff persisted and asked whether he was being detained or arrested.   *Id.*   After a further verbal exchange, Plaintiff told the Deputies that he wanted to call his attorney, prompting Deputy Augustus to allegedly reach over an unnamed passenger and "snatch" Plaintiff's phone.   *Id.* ¶ 12. Plaintiff was then arrested.[6]   *Id.*

An objective reading of the Amended Complaint and the allegations leading to Plaintiff's arrest leads the undersigned to conclude that a reasonable officer could have believed that Plaintiff was resisting arrest or obstructing justice.   Indeed, Plaintiff does not allege that he complied with the Deputies' request to produce his license and insurance documents.   Further, although Plaintiff was allegedly told not to ask any more questions, *see* (ECF No. 33 ¶ 10), Plaintiff continued to question the Deputies, culminating in his arrest.   Under this scenario, a reasonable officer in the Deputies' position could have believed that Plaintiff's continued inquiry in seeming defiance of

---

[6] Although Plaintiff argues in response to the Motion that he was arrested for a "noncriminal nonmoving traffic violation," Plaintiff was also charged with "Resisting/Obstructing Justice Without Violence."   *Compare* (ECF No. 45 at 13) *with* (ECF No. 33 ¶ 18).

the officer's instruction to produce documents and remain quiet constituted resisting or obstructing justice, a first-degree misdemeanor under Florida law. *See* Fla. Stat. § 843.02 (providing that whoever resists, obstructs, or opposes an officer shall be guilty of a first-degree misdemeanor); *see also Am. Dental Ass'n*, 605 F.3d at 1290 (court may look to obvious alternative explanations suggesting lawful police conduct); *Kirkland v. Mosaic Fertilizer, LLC,* No. 8:14-CV-1715-T-24TGW, 2015 WL 4042100, at *4 (M.D. Fla. July 1, 2015) (granting officer qualified immunity where plaintiff failed to establish burden of showing that officer violated clearly established or constitutional law); *Post*, 7 F.3d at 1559 (concluding that officer was entitled to qualified immunity because he had arguable probable cause to arrest plaintiff who kept talking after he was instructed to be quiet). Accordingly, the undersigned concludes that the Deputies are entitled to qualified immunity on this claim.

### c.  Search and Seizure of Plaintiff's Truck

Lastly, Plaintiff alleges that the Deputies conducted an unlawful search of his truck at the time of his arrest and again after the truck was impounded.  (ECF No. 33 ¶¶ 13, 19, 20-21).  As discussed previously, an officer conducting a search is entitled to qualified immunity where clearly established law shows that the search did not violate the Fourth Amendment. *Pearson*, 555 U.S. at 244.

According to the allegations in the Amended Complaint, after Plaintiff was handcuffed and sitting on the bumper, the Deputies "performed an unlawful search of plaintiff's vehicle against his protests."  (ECF No. 33 ¶ 13, hereinafter "search incident to arrest").  Subsequently, upon returning home after his arrest and booking at North Broward County Detention Facility, Plaintiff allegedly discovered that the Deputies had "seized his vehicle, [and] had it placed in police custody for further unlawful searching." *Id.* ¶ 19 (hereinafter "inventory search").  Although Defendants summarily argue that "Plaintiff has failed to allege that [the Deputies] lacked arguable probable

cause when searching his vehicle," *see* (ECF No. 37 at 11), this argument overlooks the analysis required to determine when officers may lawfully search a vehicle without a warrant.

> i.  *Search Incident to Arrest*

Warrantless searches, conducted without prior approval of a judge or magistrate judge, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.  *Gant*, 556 U.S. at 338 (citation omitted).  Among the exceptions to the warrant requirement is a search incident to a lawful arrest.  *Id.* (quotation and citation omitted).  This exception derives from interests in officer safety and preservation of evidence that are typically implicated in arrest situations.  *Id.*  Notably, in *Gant*, the Supreme Court confirmed that "[p]olice may search a vehicle incident to a recent occupant's arrest *only if* the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest."  *Gant*, 556 U.S. at 351; *see also U.S. v. Alston*, 598 F. App'x 730, 733 (11th Cir. 2015) (analyzing situations where officers may conduct warrantless vehicle searches pursuant to the recognized exceptions to the warrant requirement, such as: (i) search incident to arrest; (ii) the "automobile exception,"[7] and (iii) the "inventory exception").

Based on the allegations in the Amended Complaint, the two situations potentially permitting a warrantless vehicle search incident to arrest are absent here.  First, Plaintiff was allegedly already handcuffed and outside the truck prior to the search.  (ECF No. 33 ¶ 13).  Thus, officer safety was not an issue because Plaintiff had already been secured and was not within reach of the truck or its compartments.  Second, Plaintiff had been stopped for having unlawfully tinted

---

[7] Although the automobile exception is not implicated in this case, the exception allows law enforcement to search a car "[i]f a car is readily mobile and probable cause exists to believe it contains contraband. . . ."  *United States v. Baldwin*, 774 F.3d 711, 720 (11th Cir. 2014) (citation omitted).

windows, a Florida traffic violation, and   arrested for "Resisting/Obstructing Justice Without Violence." *Id.* ¶ 18.  It is unreasonable to conclude that evidence relevant to either of these charges might be found in the truck.  Accordingly, even under a liberal interpretation of the alleged facts, at this early juncture of the case and absent evidence to the contrary, the Deputies have not satisfied the search-incident-to-arrest exception to conduct a warrantless search of Plaintiff's truck.  *See, e.g.*, *Gant*, 556 U.S. at 343 (noting that when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence of a crime.) Accordingly, as to the initial search of Plaintiff's truck, Plaintiff has sufficiently alleged a possible Fourth Amendment violation to withstand the Deputies' assertion of qualified immunity at the motion to dismiss stage.

### ii.   Impound and Second Search of Truck

Plaintiff also alleges that the Deputies "seized his vehicle, [and] . . . placed [it] in police custody, for further unlawful searching."  (ECF No. 33 ¶ 19).  Under the liberal pleading standards afforded pro se litigants, the Court construes Plaintiff's allegation about this second search to be akin to a post-arrest seizure and inventory search.[8]

An inventory search of a car upon impoundment is justified for three reasons: (i) the protection of the owner's property while it remains in police custody; (ii) the protection of the police against claims or disputes over lost or stolen property; and (iii) the protection of the police from potential danger.  *United States v. Handy*, 592 F. App'x 893, 906 (11th Cir. 2015); *see also United States v. Moss*, 748 F. App'x 257, 259 (11th Cir. 2018) ("Inventory searches are 'a well-defined exception to the warrant requirement of the Fourth Amendment.'").  Because an inventory search is an exception to the Fourth Amendment's warrant requirement, the government has the

---

[8] In the Motion, Defendants failed to address the second search of Plaintiff's truck at the impound. *See generally* (ECF No. 37).

burden of showing that the requirements of the inventory search exception have been met. *Handy*, 592 F. App'x at 906.  Moreover, the validity of an inventory search of a vehicle depends on the legality of the decision to impound the vehicle. *Id.* at 907; *Moss* 748 F. App'x at 259 (under the inventory search doctrine, the officer must first have authority to impound the vehicle pursuant to impoundment policy).  Although an officer's decision to impound a vehicle may involve discretion, it must be made according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. *Handy*, 592 F. App'x at 906.  The critical question is whether the decision to impound and the method chosen for implementing that decision were, under all the circumstances, within the realm of reason. *Id.*

Upon a review of the Amended Complaint and at this stage of the litigation, the undersigned finds that there is no evidence against which to evaluate the lawfulness of the truck's seizure and subsequent inventory search to determine whether the exception applies.  Thus, as to the seizure and inventory search of Plaintiff's truck, Plaintiff has sufficiently alleged a possible Fourth Amendment violation to withstand the Deputies' assertion of qualified immunity at this time.

In sum, the undersigned recommends that the Motion be denied as to Plaintiff's claims regarding the two searches of his truck.

### C.  No Liability Against Sheriff Israel pursuant to Count III

#### 1.  Plaintiff has not Established Municipal Liability Against Sheriff Israel

The Amended Complaint includes claims against Sherriff Israel in his individual and official capacities. *See* (ECF No. 33 ¶ 2; 16).   An official capacity suit "is, in essence, a suit against the government." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 n.6 (11th Cir. 1991) (citation omitted).  Therefore, a § 1983 action against a public official in his official capacity is considered a suit against the municipality that he represents. *Anderson v. Mascara*, 347 F. Supp.

3d 1163, 1172 (S.D. Fla.  2018) (citing *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015);

*Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005).  Here, the governmental entity is the

Broward County Sheriff's Office.  (ECF No.  33 ¶ 2) (alleging claims against "Broward Sheriff"

as the "Sheriff of  Broward County"); *see also Johnson v. Cannon*, 947 F. Supp. 1567, 1571 (M.D.

Fla. 1996) ("[I]n Florida. . . . the Sheriff is the policymaker and final authority for his agency.").

Accordingly, Plaintiff's claims against Sheriff Israel in his official capacity constitute a suit against

the Broward Sheriff's Office, which although not a named defendant in this case, is the government

entity defendant as a matter of law.

In response to the Motion, Plaintiff concedes that a government entity is not liable for the

actions of its employees under § 1983 by operation of the concept of *respondeat superior* or

vicarious liability.  *See* (ECF No. 45 at 5); *see also Los Angeles Cty. v. Humphries*, 562 U.S. 29,

35 (2010) (§ 1983 does not impose vicarious liability solely on the basis of an employer-employee

relationship with defendant); *Iqbal*, 556 U.S. at 676 (holding that vicarious liability is inapplicable

to § 1983 suits); *Brown*, 923 F.2d at 1479 (noting that there is no municipal liability on the basis

of *respondeat superior*); *Gilmere v. City of Atlanta*, 737 F.2d 894, 902 (11th Cir. 1984), *on reh'g*,

774 F.2d 1495 (11th Cir. 1985) (same); *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978)

(noting that a government may not be sued under § 1983 for injury inflicted solely by its employees

or agents).  Rather, a § 1983 claim against a municipal defendant must allege the existence of a

municipal policy or custom that resulted in the deprivation of specific federal constitutional or

statutory rights.  *Monell*, 436 U.S. at 694; *Brown*, 923 F.2d at 1480 (noting that policy may be

implicated by the acts of policymaking officials or by pervasive custom); *Gilmere*, 737 F.2d at 901

(official policy or custom must be the moving force of the constitutional violation in order to

establish § 1983 liability on a government body).  Recovery from a municipality is limited to acts

that the municipality has officially sanctioned or ordered.[9]  *Brown*, 923 F.2d at 1479.

Count III of the Amended Complaint essentially alleges an informal policy or municipal

custom.  Specifically, Plaintiff alleges that Sheriff Israel "[knew] of the history of abuses, in terms

of his agent's unlawful acts of stopping pedestrians and/or citizens, either walking and/or driving

. . . for the sole purpose of violating the rights of those individuals, [which] makes [Sheriff Israel]

liable for the acts of his agents under the doctrine of respondeat superior."  (ECF No. 33 ¶ 22; 16).

In the "Memorandum of Law" section of the Amended Complaint, Plaintiff further asserts that

Sheriff Israel should have known of the unlawful tactics of the Deputies, but failed to take any

corrective actions or to retrain the Deputies when "scores of lawsuits" gave Sheriff Israel notice

of violations.  (ECF No. 33 at 16).  Plaintiff ultimately concludes that Sheriff Israel has a "de facto"

policy of covering up police misconduct by failing to properly investigate alleged misconduct by

officers.  *Id.* at 16-17.  In support of the allegation regarding "scores of lawsuits" and a "de facto"

policy, Plaintiff summarily references three cases allegedly filed against Sheriff Israel in this

District for "false arrest."  *See* (ECF No. 33 at 16) (listing *Kollin v. Sheriff*, No. 15-62728,

*Rodriguez v. Sheriff*, No. 11-61776,[10] and *Augello v. Sheriff*, No. 12-61240 as examples of suits

filed against Sheriff Israel for "fail[ing] to rectify the wrongdoings by turning a blind eye.").[11]

---

[9] *Brown v. City of Fort Lauderdale* also clarifies that municipal liability can be based on the acts of a formal policymaker or on a municipal custom.  923 F.2d at 1479-80.  Based on the Amended Complaint, the relevant analysis in this case is the municipal custom theory.

[10] Case No. 11-61776 corresponds to a case captioned *Lawson v. Town of Davie, et al.*, a § 1983 action commenced on August 9, 2011, against the Township of Davie and various officers. *Lawson*, No. 11-61776 (S.D. Aug. 9, 2011) (the "*Lawson* case").  That case settled in May 2012. It is unclear whether Plaintiff intended to refer to the *Lawson* case (which did not involve Sheriff Israel) or instead intended to refer to *Rodriguez v. Cady*, No. 12-CV-60844-DTKH (S.D. Fla. 2012), a § 1983 action commenced on May 6, 2012 against several defendants, including Sheriff Israel (the "*Rodriguez* case"), further discussed below.

[11] The Amended Complaint contains no specific facts regarding these cases.  *See* (ECF No. 33 at 16).  Plaintiff also mistitles the cases as being against "Sheriff Scott Israel."  *Id.*  The Court's

Against this legal and factual backdrop, the Court finds that, even when read liberally, the Amended Complaint fails to demonstrate a causal connection between Plaintiff's alleged harm and an official custom, policy, or practice implemented or otherwise enforced by Sheriff Israel.  *See Monell*, 436 U.S. at 694; *Coffield*, 2017 WL 3600942, at *4.  A custom must be widespread and persistent with the governing body having "actual or constructive knowledge" of the unlawful acts.  *Depew v. City of St. Mary's,* 787 F.2d 1496, 1499 (11th Cir. 1986); *Brown*, 923 F.2d at 1481 (to establish municipal liability based on custom, a plaintiff must show a widespread practice that "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute 'custom or usage' with the force of law").  Moreover, the complaint must include at least some factual details sufficient to establish the plausibility of the conclusory

independent review of the public record, however, confirms that the cases, summarized below, are factually distinguishable from the case at hand:

(i) *Kollin v. Dorsett,* No. 15-CV-62728-WJZ (S.D. Fla. 2015), was a § 1983 action commenced on December 31, 2015 against several defendants, including Sheriff Israel, alleging claims of First Amendment free speech retaliation.  After motion practice and unsuccessful settlement negotiations, the case proceeded to trial in November 2017. *See Kollin*, No. 15-62728 (S.D. Fla. Nov. 1, 2017) (ECF No. 90).  After a three-day trial, the jury returned a verdict in favor of defendants and concluded that the officer had probable cause to arrest plaintiff for the crime of obstruction.  *See Kollin*, No. 15-62728 (S.D. Fla. Nov. 3, 2017) (ECF No. 97).

(ii) The *Rodriguez* case involved an 18-count complaint, plaintiffs generally alleged claims for false arrest, false imprisonment, malicious prosecution, and battery, among other claims. *Rodriguez*, No. 12-CV-60844-DTKH (S.D. Fla. Feb. 25, 2013) (ECF No. 33) (containing the Second Amended Complaint).  After six days of trial, the parties entered into a stipulated settlement agreement announced in open Court.  *Rodriguez*, No. 12-CV-60844-DTKH (S.D. Fla. Nov. 25, 2013) (ECF No. 88).  The case was, therefore, dismissed with prejudice.  Although in his Amended Complaint Plaintiff describes this case as having "settled for $350,000," *see* (ECF No. 33 at 16),  the public record does not reflect the settlement amount.

(iii) *Augello v. Broward County Sheriff*, No. 12-CV-61240-WPD (S.D. Fla. 2012), was a three-count § 1983 complaint against the Sheriff of Broward County for false arrest and negligent supervision and training, among other claims.  *Augello*, No. 12-61240 (S.D. Fla. June 20, 2012) (ECF No. 1).  On April 8, 2013, the District Court dismissed the case due to plaintiff's failure to respond to the Court's Orders to Show Cause and plaintiff's failure to attend Court-ordered mediation.  *Id.* (ECF No. 37).

allegations regarding the alleged unconstitutional policy. *Jackson v. Miami-Dade Cty.*, No. 18-20665-CIV, 2018 WL 5787247, at *11 (S.D. Fla. Nov. 5, 2018); *Am. Fed'n of Labor-Cong. of Indus. Org. v. City of Miami,* 650 F. Supp. 2d 1258 (S.D. Fla. 2009).

Here, however, beyond conclusory allegations and a summary reference to three lawsuits that are distinguishable from Plaintiff's alleged harm, Plaintiff provides no supporting facts through which to establish a municipal policy or custom. *See, e.g.*, *Jackson*, 2018 WL 5787247, at *9-11 (concluding complaint lacked factual information regarding sixteen past incidents and was insufficient to support a claim for municipal liability); *Anderson*, 347 F. Supp. 3d at 1173 (finding allegation of hundreds of incident reports was insufficient to establish the existence of uncorrected police misconduct); *Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1321-22 (S.D. Fla. 2015) (concluding that plaintiff had failed to show an unofficial policy of excessive force in alleging four isolated prior incidents of police misconduct).  Although Plaintiff is correct that a single isolated incident can establish a custom when the alleged unlawful act is perpetuated by an officer who has final decision-making on the subject or can be fairly said to represent official policy, (*see* ECF No. 45 at 8-9), a complaint must contain more than vague and conclusory allegations of an informal policy to survive a motion to dismiss. *Gilmere*, 737 F.2d at 904 (noting that isolated violations are not the persistent, often repeated, constant violations constituting custom or policy); *Barnes v. Miami-Dade Cty.*, No. 13-20778-CIV, 2014 WL 12851971, at *7 (S.D. Fla. Mar. 12, 2014) (conclusory allegations that county adopted policies, customs, and practices in violation § 1983 were insufficient to survive motion to dismiss).

Accordingly, the undersigned concludes that Plaintiff's allegations of an unlawful stop, arrest, seizure, and searches of property by the Deputies are insufficient to show the type of persistent and widespread policy necessary to confer municipal liability on the Broward Sheriff's

Office through Defendant Sheriff Israel.  Thus, the Motion should be granted as to Plaintiff's municipal liability claims.

> 2. *Plaintiff has Not Established Supervisory Liability Against Sheriff Israel*

In Count III of the Amended Complaint, Plaintiff also alleges that Sheriff Israel is liable for the acts of his agents under the doctrine of *respondeat superior*.  (ECF No. 33 ¶ 22; 16).  In response to the Motion, however, Plaintiff concedes that "liability cannot be predicated solely upon the doctrine of *respondeat superior*."  (ECF No. 45 at 5).

In this Circuit, supervisory officials are not liable for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  *Gonzalez*, 325 F.3d at 1234 (quotation and citation omitted); *see also Belcher v. City of Foley*, 30 F.3d 1390, 1396-97 (11th Cir. 1994) (although supervisory officials are not liable under § 1983 on the basis of *respondeat superior* or vicarious liability, they may be liable when there is a causal connection between the official's actions and the alleged constitutional deprivation).  Moreover, the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous.  *Gonzalez*, 325 F.3d at 1234 (citing *Braddy v. Florida Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir.1998).  In particular, supervisors can be held liable for their own conduct, or when there is a causal connection between the supervisor's act and the alleged resulting constitutional violation by his subordinates.[12]  *Gonzalez*, 325 F.3d at 1234.  A causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or "when the supervisor's improper 'custom or policy . . . resulted in deliberate indifference to constitutional rights.'"  *Id.* at 1234-35 (citation omitted).  A causal connection can also be established by facts supporting an

---

[12] In this regard, Plaintiff insists that there is a causal connection inference that can be drawn based on Sheriff Israel's alleged knowledge of prior lawsuits.  (ECF No. 45 at 5-6).

inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them. *Id.* (citation omitted). Causal connections based on a history of widespread abuse must be "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation omitted). To survive a motion to dismiss, the plaintiff must be able to allege the establishment of widespread abuse by including examples of such abuse. *Whitaker*, 126 F. Supp. 3d at 1321 (dismissing complaint where plaintiff had not described prior incident involving a relevant constitutional violation).

Here, even upon a liberal reading, the Amended Complaint fails to allege sufficient facts to establish supervisory liability against Sheriff Israel. As an initial matter, Plaintiff does not allege that Sheriff Israel personally participated in the alleged events of November 22, 2013. Rather, in conclusory fashion, Plaintiff alleges that Sheriff Israel "knew or should have known of the unlawful tactics of the defendants in violating the rights of the People and failing to take corrective actions or to retrain the defendants when scores of lawsuits, for false arrest, ha[ve] clearly placed [Sheriff Israel] on proper notice of the violations of citizen's rights by his agents." (ECF No. 33 at 16). To support his allegations regarding "scores of lawsuits," Plaintiff references three cases, but fails to explain the factual similarity, if any, between those cases and the instant case. Moreover, the Court's review of the public record confirms that the cases on which Plaintiff relies are wholly dissimilar to the instant case. *See supra* Section C.1.

At bottom, beyond conclusory allegations regarding a "de facto policy of covering up police misconduct" and an alleged casual connection between Sheriff Israel's conduct and the acts of the Deputies, the Amended Complaint is devoid of facts to establish a causal connection between the referenced cases and the events of November 2013. Without this causal link, Plaintiff has failed to establish that Sheriff Israel should be deemed to have supervisory liability for the

alleged events.[13]   *See, e.g.*, *Gonzalez*, 325 F.3d at 1235 (plaintiff's vague and conclusory allegations, without supporting facts, failed to establish supervisory liability).   Accordingly, Plaintiff's claim against Sheriff Israel on grounds of supervisory liability should be dismissed.

### 3. Plaintiff has Failed to Establish Individual Liability Against Sheriff Israel

The Amended Complaint also asserts claims against Sheriff Israel in his individual capacity.   (ECF No. 33 ¶¶ 2, 22; 16).   Suits brought against individuals, known as personal capacity suits, seek to impose personal liability upon a government official for actions taken under color of state law.   *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Busby*, 931 F.2d 765, 772 (11th Cir. 1991) (noting that when plaintiff sues a municipal officer in an individual capacity, plaintiff seeks monetary damages from the officer).   To establish personal liability in a § 1983 action, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."   *Graham*, 473 U.S. at 166.

Here, although the Amended Complaint alleges that Sheriff Israel is being sued in his individual capacity, *see* (ECF No. 33 ¶ 2; 16), Plaintiff fails to allege any conduct by Sheriff Israel to support individual liability.   Instead, the Amended Complaint attempts to hold Sheriff Israel liable for "the acts of his subordinates, [the Deputies.]"   (ECF No. 33 at 16); *see also* (ECF No. 45 at 4) (arguing that Sheriff Israel "breached his duties as the supervisor of [the Deputies]").   Based on these allegations, and Plaintiff's labels and legal conclusions notwithstanding, the undersigned finds that Plaintiff's claims against Sheriff Israel are premised on concepts of supervisory liability. *See, e.g.*, *Lawrence v. W. Publ'g Corp.*, No. 1:15-CV-3341-MHC, 2016 WL 4257741, at *13 (N.D. Ga. June 17, 2016) (dismissing individual capacity claims against defendant where the allegations

---

[13] In conclusory fashion, Plaintiff also argues that Sheriff Israel had a "State and Local duty to properly train or to retrain his officers."  *See* (ECF No. 45 at 8).  For the reasons stated above, however, these conclusory arguments are insufficient to meet Plaintiff's burden to show supervisory liability against Sheriff Israel on Count III of the Amended Complaint.

concerned supervisory liability); *see also Miccosukee Tribe of Indians v. Jewel*, 996 F. Supp. 2d 1268, 1273 (S.D. Fla. 2013) (construing plaintiff's claims as official capacity claims even though the complaint did not specify).  Accordingly, the claims against Sheriff Israel in his individual capacity should be dismissed.

### D.  Plaintiff May Seek Punitive Damages Against the Deputies in their Individual Capacities

The Amended Complaint seeks $1 million against each Defendant as punitive damages to "prevent future occurrences." (ECF No. 33 at 19).  Although the Amended Complaint names Defendants in their individual and official capacities, Plaintiff concedes that punitive damages are not appropriate when officers are sued in their official capacity.  *See* (ECF No.  45 at 16) ("Plaintiff does not dispute defendants' [assertion that] punitive damages are not recoverable from these defendants in their official capacities . . . ."); *see also Cline v. Broward Cty. Sheriff's Office*, No. 05-61909-CIV, 2007 WL 2453558, at *4 (S.D. Fla. Aug. 23, 2007) (punitive damages not recoverable in § 1983 claims against counties and municipal defendants); *Brooks v. Jenne*, No. 04-60271-CIV, 2005 WL 5488060, at *4 (S.D. Fla. July 15, 2005) (finding punitive damages unavailable against Defendant Broward County Sheriff in his official capacity); *Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995) (noting that Sheriff's Office, like municipalities, is immune from punitive damages under § 1983).  Accordingly, Plaintiff cannot recover punitive damages on his claims against Defendants in their official capacities.  *Estate of Coleman v. Scott*, No. 2:10-CV-105, 2010 WL 3189528, at *1 (M.D. Fla. July 20, 2010); *Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005); *Busby*, 931 F.2d at 776.

In the Amended Complaint, Plaintiff also alleges claims against Defendants in their individual capacities.  (ECF Nos. 33 ¶¶ 2-4, 16, and 45 at 17).  Punitive damages may be sought when government officials are sued in their individual capacity.  *Scott*, 2010 WL 3189528, at *1 (striking punitive damages for official capacity claims while retaining punitive damages on

individual capacity claims).  Upon a liberal reading of the Amended Complaint, punitive damages may thus be available on Plaintiff's claims against the Deputies in their individual capacities.  (ECF Nos. 33 ¶¶ 2-4 and 16, 45 at 17);  *Scott*, 2010 WL 3189528, at *2.  Accordingly, at this juncture of the litigation, because two of Plaintiff's claims against the Deputies in their individual capacities survive dismissal (i.e., the two searches of the truck), punitive damages against the Deputies in their individual capacities should not be stricken.[14]

## IV.   RECOMMENDATION

Accordingly, for reasons set forth above, the undersigned respectfully recommends that the Defendants' Renewed Motion to Dismiss (ECF No. 37) be **GRANTED IN PART AND DENIED IN PART** as follows:

1.     Plaintiff's claims against the Deputies in Counts I and II in their official capacities should be **DISMISSED WITHOUT PREJUDICE**;

2.     Plaintiff's claims of  an unlawful vehicle stop and unlawful arrest within Counts I and II against the Deputies in their individual capacities should be **DISMISSED WITHOUT PREJUDICE**;

3.     Plaintiff's claim of an unlawful search and seizure of his truck within Counts I and II against the Deputies in their individual capacities should **REMAIN**;

4.     Plaintiff's claims against Sheriff Israel in Count III in his official and individual capacities should be **DISMISSED WITHOUT PREJUDICE**;

5.     Plaintiff's claim for punitive damages against Defendants in their official capacities should be **STRICKEN**;

---

[14] To be clear, however, given the early juncture of the case and the absence of evidence regarding the searches of Plaintiff's truck, it remains uncertain whether any claims against the Deputies in their individual capacities would ultimately survive.  *See, e.g.*, *Scott*, 2010 WL 3189528, at *2 n.2 (allowing punitive damages to remain although the court declined to opine on the ultimate survivability of the alleged claims).

6.      Plaintiff's claim for punitive damages against the Deputies in their individual capacities should **REMAIN** on the surviving claims.  *See* paragraph 3 above;

7.      Plaintiff should be allowed to amend his Complaint to address the substantive deficiencies discussed in this Report and Recommendation.  *See, e.g.*, *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000) (noting that before dismissing a complaint with prejudice because of pleading defect, a court must ordinarily give plaintiff an opportunity to amend the complaint and cure the defect, unless amendment would be futile); *Phillips*, 2018 WL 3586179, at *4 (concluding that dismissal with prejudice was unwarranted where the court had not previously ruled on the sufficiency of the claims).  Although Plaintiff has already amended the complaint once to identify Defendants, the undersigned does not find that further amendment of the complaint would be futile.  Moreover, at this early stage of the litigation, Defendants would not be prejudiced by further amendment of the complaint.

Within **fourteen (14)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2019); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on September 13, 2019.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Roy Altman
    All Counsel of Record