**TIMOTHY LEE JOHNSON**,

     *Plaintiff*,

v.

**BROWARD COUNTY SHERIFF**
**SCOTT ISRAEL, DEPUTY JUSTIN**
**AUGUSTUS,** *and* **DEPUTY**
**TIMOTHY METZ**,

     *Defendants*.

_____/

## ORDER

    **THE DEFENDANTS** have filed a Renewed Motion to Dismiss ("MTD") [ECF No. 37].[1]

The Plaintiff, who is *pro se*, responded ("MTD Response") [ECF No. 45], and the Defendants did

not reply. The Honorable Kathleen M. Williams, United States District Judge, referred the MTD

to Magistrate Judge Alicia O. Valle for a Report & Recommendation ("R&R") [ECF No. 39].

While the MTD was pending before the Magistrate Judge, Judge Williams transferred the case to

this Court [ECF No. 46]. After the Magistrate Judge issued her R&R [ECF No. 47], both parties

objected. *See* Pl. Objections [ECF No. 49]; Def. Objections [ECF No. 48]. The Court has

conducted a *de novo* review of those portions of the R&R to which the parties have objected[2] and

now **ADOPTS** the R&R **IN FULL**.

---

[1] Although the Defendants filed their MTD in November 2018, they failed to mail a copy of it to
the Plaintiff until February 11, 2019. *See* Notice of Compliance [ECF No. 42].

[2] *See* FED. R. CIV. P. 72(b)(3) ("*Resolving Objections.* The district judge must determine de novo
any part of the magistrate judge's disposition that has been properly objected to. The district judge
may accept, reject, or modify the recommended disposition; receive further evidence; or return the
matter to the magistrate judge with instructions.").

# BACKGROUND

The Plaintiff, Timothy Lee Johnson, filed his Amended Complaint[3] on October 29, 2018. *See* Am. Compl. [ECF No. 33]. In it, he alleges that, on November 22, 2013, while he was driving a "truck with dark tinted windows," two Broward County Sheriff's Office ("BSO") Deputies—Defendants Justin Augustus and Timothy Metz—followed him into the "parking area of his residence." Am. Compl. ¶¶ 8-9. After Johnson pulled over, the Deputies walked up to Johnson's car and "demand[ed] him to provide" his driver's license, registration, and insurance card. *Id.* ¶ 9. When Johnson asked the Deputies why they had stopped him, the Deputies "displayed displeasure" and said, "in harsh terms," "don't you ask me no questions[,] just do as you are told." *Id.* ¶ 10. But, instead of complying with this directive, Johnson asked whether he was being arrested and, if so, why. *Id.* Deputy Metz "express[ed] extreme anger and/or frustration" at Johnson's questions and answered that Johnson was "not under arrest *yet*." *Id.* ¶ 11 (emphasis in original).

Johnson then told the Deputies that he wanted to call his attorney. *Id.* ¶ 12. In response, Deputy Augustus walked to the front passenger door of Johnson's truck, reached over an unnamed passenger, and "abruptly snatched" the phone from Johnson's hand, causing the phone to break. *Id.* Without any further warning, Deputy Augustus informed Johnson that he was under arrest, pulled Johnson from the vehicle, placed him against the truck's bumper, handcuffed him, and ordered the unnamed passenger to step out of the truck. *Id.* ¶¶ 12-13. The Deputies then searched Johnson's truck "against his protests," placed him in a police vehicle, and drove him to the North Broward County Detention Facility. *Id.* ¶¶ 13-14. At the Detention Facility, Johnson was

---

[3] The Court granted Johnson leave to amend his original complaint both to identify the previously-unnamed deputies and to attach police reports that included the deputies' names and badge numbers. *See* August 14, 2018 Order [ECF No. 29]. In all other respects, though, the operative Amended Complaint is virtually identical to Johnson's original complaint.

questioned and ordered to change into "prison garments." *Id.* ¶ 15. But, when the "Lieutenant-in-charge" heard that Johnson was diabetic, he ordered his officers to "get this man out of my jail now." *Id.* ¶ 16.

BSO officials returned Johnson's clothing to him and drove him back to the parking lot where he had been arrested. *Id.* ¶¶ 17-18. At this point, Johnson says, he discovered that, while he was at the Detention Facility, the "defendants" had seized his car and "placed it in police custody for further unlawful searching." *Id.* ¶ 19. Johnson was charged with "Side Wind/Rest Sunscreen [too dark]" and "Resisting/Obstructing Justice Without Violence." *Id.* ¶ 18. But, after an initial appearance, the state judge dismissed all charges "with no discussion." *Id.*

Based on these allegations, Johnson advances three causes of action against the Defendants. *See generally* Am. Compl. In Counts I and II, Johnson alleges that Deputies Augustus and Metz, respectively, deprived him of his right to be free from "unreasonable restraints," "unreasonable searches and seizures of his property," and "unreasonable, unlawful arrest . . . without probable cause.'" Am. Compl. ¶ 20 (Augustus) & ¶ 21 (Metz). In Count III, Johnson avers that Sheriff Israel knew his agents were "stopping pedestrians and/or citizens . . . for the sole purpose of violating the rights of those individuals in an attempt to discover evidence of a crime." *Id.* ¶ 22.[4] All three counts assert claims against the Defendants in both their individual and official capacities.

The Defendants have moved to dismiss the Amended Complaint with prejudice. *See generally* MTD.

---

[4] On January 11, 2019, Governor DeSantis formally suspended Sheriff Israel via Executive Order 19-14. *See* Fla. Exec. Order No. 19-14 (Jan. 11, 2019), https://www.flgov.com/wp-content/uploads/2019/01/EO-19-14.pdf.

**THE LAW**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and must accept the plaintiff's factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)). Unsupported factual allegations and legal conclusions, however, receive no such deference. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The Court must interpret the *pro se* complaint liberally, *see Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018), because *pro se* pleadings are held to "less stringent standards than those drafted by an attorney," R&R at 4 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *cf. Coffield v.*

*Broward Cnty. Jail*, No. 17-CV-61366, 2017 WL 3600942, at *4 (S.D. Fla. July 21, 2017), *report and recommendation adopted sub nom. Coffield v. Broward Cnty. Main Jail*, 2017 WL 3623677 (S.D. Fla. Aug. 22, 2017). But the Court may not "serve as de facto counsel or [] rewrite an otherwise deficient pleading in order to sustain an action." *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011).

## ANALYSIS

### I. Shotgun Pleading

As a preliminary matter, the Court agrees with the R&R's conclusion—to which neither party objects—that the Amended Complaint is not a shotgun pleading. *See* R&R at 6-7. While the Amended Complaint "could have been more artfully drafted," it does not contain "extraneous allegations in the individual counts" that would confuse or otherwise unduly burden the Defendants' preparation of their defenses. R&R at 6-8 (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015)).

### II. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Priester v. City of Riviera Bch., Fla.*, 208 F.3d. 919, 925 (11th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In this way, the defense of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To qualify for the immunity, a government official must show that the challenged actions were committed within the scope of

his discretionary authority. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). If he can do so, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

To overcome the qualified immunity defense, a plaintiff must demonstrate that the official deprived him of a constitutional right that was "clearly established" when the alleged offense occurred. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). This requirement "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* at 206. For purposes of qualified immunity in this District, only decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Supreme Court of Florida constitute "clearly established" law. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

The R&R helpfully categorized Johnson's allegations into three distinct claims:

(i) an unlawful stop of his truck, *see* [ECF No. 33 ¶¶ 8-10] (alleging that the Deputies followed Plaintiff's truck, which had dark tinted windows, and demanded to see Plaintiff's driver's license, registration, and insurance); (ii) an unlawful arrest, *see id.* ¶¶ 20-21 (alleging that the Deputies' actions were "a violation of plaintiff's rights under the Florida and Federal Constitutions against the unreasonable and unlawful arrest, search, and seizure of personal property without probably cause"); and (iii) an unlawful search and seizure of his truck, *see id.* ¶¶ 13, 19, 20-21 (alleging that the Deputies "seized [Plaintiff's] vehicle," and "placed it in police custody, for further unlawful searching").

R&R at 10. With this framework in mind, the Court now turns to Johnson's central claim: that the stop, the arrest, and the two searches of his truck violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Priester*, 208 F.3d. at 925 (citation omitted).

## A. Discretionary Authority

This Court agrees with the R&R's threshold conclusion that the Deputies' acts "undoubtedly fall within [their] discretionary authority." R&R at 10 (citing *Sevostiyanova v. Cobb*

*Cnty.*, 484 F. App'x 355, 357 (11th Cir. 2012) (noting that a police officer acts within his discretionary authority when he arrests someone); *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (acknowledging that, in certain circumstances, an officer may conduct a warrantless search of a vehicle incident to a lawful arrest)).[5] Johnson must therefore show that the Defendants' conduct violated "clearly established" law.

## B. The Truck Stop

In his Amended Complaint, Johnson concedes that he was driving a truck with "dark tinted windows," *see* Am. Compl. ¶ 8—which, if true, would violate Florida's State Uniform Traffic Control laws. Indeed, Florida law specifically prohibits "sunscreening or other product that makes a car window nontransparent, increases its reflectivity, reduces its light transmittance, or which alters the windows' color . . . [a] violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318." Fla. Stat. § 316.2953. Taking the Amended Complaint's factual averments as true, therefore, the Deputies had "arguable probable cause" to stop Johnson's truck. *See Perry v. Greene Cnty., Ga.*, 392 F. App'x 761, 764 (11th Cir. 2010) (officers had "arguable probable cause"—and were thus entitled to qualified immunity—when they stopped the plaintiff for driving with an obscured license plate, which, if true, would have violated Georgia law); *see also Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed."); *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (in determining whether the

---

[5] Johnson suggests, without citation to any authority, that the "officers did not have discretionary authority to arrest the plaintiff[] where no crime had been committed." Pl. Objections at 8. But this is not the law. The officers' discretionary authority simply refers to the "job-related powers and responsibilities that the public official has in the general fulfillment of his official duties." *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004).

officers had "arguable probable cause," courts ask only "whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation"). Because a "non-criminal traffic infraction can provide a basis to perform a lawful traffic stop," Johnson's concession that he was driving a truck with "dark tinted windows" eviscerates his claim that the stop violated his "clearly established" constitutional rights. *See Harris v. Rambosk*, No. 2:18-CV-17-FTM-29MRM, 2019 WL 5722080, at *13 (M.D. Fla. Nov. 5, 2019) (because a "non-criminal traffic infraction provides basis to perform a lawful traffic stop," officer's observation of vehicle in non-compliance with Florida's traffic statute provides probable cause to initiate a traffic stop).

In his Objections, Johnson notes that "dark tinted windows" are not illegal and argues that the Deputies used the dark tint of his windows as a pretext for an otherwise-improper stop. Pl. Objections at 4. In support, Johnson points out that the Deputies never "mentioned" or measured his windows' Visible Light Transmission percentage. *Id.* But Johnson misunderstands the doctrine of "arguable probable cause." Under that doctrine, whether Johnson's tints were in fact illegal— or whether the Deputies subjectively believed them to be illegal—is irrelevant. Instead, the Court asks only whether it was "objectively reasonable" for the Deputies to stop Johnson's truck because of its "dark tinted" windows—"regardless of the officer's underlying intent or motivation." *Vaughan v. Cox*, 343 F.3d at 1332. And, because Johnson admits that his car had "dark tinted windows," he fails to state a plausible § 1983 claim for the Deputies' initial decision to stop him.

That said, a *pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*); *Phillips v. City of W. Palm Beach*, No. 18-CV-80172, 2018 WL

3586179, at *4 (S.D. Fla. July 26, 2018) (dismissal with prejudice unwarranted where the court had never before ruled on the sufficiency of the plaintiff's claims). Applying this standard here, the Court **DISMISSES without prejudice** the allegations in Counts I and II relating to the traffic stop.

### C. The Unlawful Arrest

Johnson next challenges the Deputies' decision to arrest him. In Florida, "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . ." Fla. Stat. § 843.02. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Lee v. Ferraro*, 284 F.3d 1188, 1194-95 (11th Cir. 2002).

By his own admission, Johnson never complied with the Deputies' commands. He did not, for instance, produce his driver's license, disclose his registration, or turn over his insurance documents—despite the Deputies' clear instructions. *See* Am. Compl. ¶¶ 9-12. Instead, he: (1) "inquired of Defendant Augustus as to the reasoning for the stop"; (2) after being admonished to "do as you are told," "persiste[d]" by asking "whether I am being detained or under arrest for something, and if so, what?"; and, (3) after being told that he was not under arrest, said that he wanted to call his attorney. *Id.* In short, Johnson unambiguously failed to comply with the Deputies' commands. And, as Judge Valle explained, "a reasonable officer in the Deputies' position could have believed that Plaintiff's continued inquiry in seeming defiance of the officer's instruction to produce documents and remain quiet constituted resisting or obstructing justice, a first-degree misdemeanor under Florida law." R&R at 13 (citing Fla. Stat. § 843.02 (providing that

whoever resists, obstructs, or opposes an officer shall be guilty of a first-degree misdemeanor)).

As the Eleventh Circuit has explained, an officer is entitled to qualified immunity if, in similar circumstances, a reasonable officer could have believed that there was probable cause to make the arrest. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993) (officer was entitled to qualified immunity because he had "arguable probable cause" to arrest plaintiff who kept talking after he was instructed to be quiet); *accord Redlich v. Leen*, No. 16-CIV-20001, 2016 WL 3670575, at *12 (S.D. Fla. May 20, 2016) (plaintiff's failure to comply with officer's request to produce license after traffic stop gave officers probable cause to arrest for violation of Fla. Stat. § 843.02); *Ryder v. Andrews*, No. 615CV204ORL22TBS, 2016 WL 9503729, at *6 (M.D. Fla. June 22, 2016) (officer had probable cause to arrest plaintiff for violation of Fla. Stat. § 843.02 where, "instead of simply providing his license and registration," plaintiff repeatedly asked officer why he was stopped); *see also Am. Dental Ass'n*, 605 F.3d at 1290 (court may look to obvious alternative explanations for police conduct).[6]

In his Objections, Johnson contends that he should have been permitted to question the officers after they stopped him. *See* Pl. Objections at 4. In Johnson's view, because he had not yet been arrested "at that point," he had "every right to ask whether he was under arrest." *Id.* And, Johnson adds, the Deputies violated his First and Fourteenth Amendment rights when they arrested him for asking why he had been stopped. *Id.*

Here, again, Johnson misstates the law. He was, to be sure, permitted to ask the Deputies why they had stopped him. But he was *not* permitted to ignore their command to produce his

---

[6] Nor is there anything even remotely unconstitutional about a state law that authorizes an officer—like the Deputies here—to arrest a man who, during a valid traffic stop, failed to provide his name or identification. *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 188-89 (2004) (state law authorizing officers to request name or identification during valid traffic stops, and to arrest persons who fail to comply with those requests, consistent with Fourth Amendment).

license, his registration, and his insurance card. And, notably, the Amended Complaint never suggests that he ever complied—or made any attempt to comply—with any of these directives. Nor does Johnson seek leave to amend his allegations to include any such compliance. And courts in this Circuit have roundly rejected Johnson's argument that, armed with probable cause, the Deputies' decision to arrest him abridged his First Amendment right to ask about the reason for his detention. *See Lee*, 284 F.3d. at 1194-95; *Ryder*, 2016 WL 9503729 at *6. More importantly, the Supreme Court has now squarely held that, to assert a First Amendment retaliatory arrest claim, a plaintiff must first plead and establish *the absence of* probable cause. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

Because, in sum, the Amended Complaint's allegations support the Deputies' view that they had "arguable probable cause" to arrest Johnson, the Deputies are entitled to qualified immunity, and Johnson's claims in Counts I and II that the arrest was unconstitutional are **DISMISSED without prejudice**.

### D. The Search and Seizure of Johnson's Truck

Finally, Johnson alleges that the Deputies searched his car illegally on two separate occasions: once when he was arrested and a second time after the truck was impounded. *See* Am. Compl. ¶¶ 13, 19, 20-21.

"An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. 223, 243-244 (2009). Generally speaking, officers may conduct a warrantless search of a vehicle only when one of the following "exceptions" to the warrant requirement exists: (1) the incident-to-arrest exception; (2) the automobile exception; or (3) the "inventory" exception. *See U.S. v. Alston*, 598

F. App'x 730, 733 (11th Cir. 2015). The automobile exception allows law enforcement to search a car if it "is readily mobile and probable cause exists to believe it contains contraband . . . ." *United States v. Baldwin*, 774 F.3d 711, 720 (11th Cir. 2014). As Judge Valle notes, this exception does not apply here. R&R at n.7. And the Defendants do not challenge this finding. The Court will therefore address the two searches—the initial search at the scene and the impounded search at the police department—under the specific exception that, in the Defendants' view, applies to each search.

### i.     The Search at the Scene: The Incident-to-Arrest Exception

The police may search a vehicle "incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343. According to the Amended Complaint, the initial search occurred after Johnson was arrested and handcuffed—and while he was seated on the bumper of his truck. *See* Am. Compl. ¶ 13. Johnson's unnamed passenger was, the Amended Complaint avers, likewise secured and outside the truck when the search occurred. *Id.* Reasonably read, then, when the Deputies first searched the truck, both of its occupants were secure and at a safe distance from the truck's passenger compartment. The Deputies, moreover, ultimately cited Johnson for having "Side Wind/Rest Sunscreen [too dark]" and charged him with "Resisting/Obstructing Justice Without Violence." *See* Am. Compl. ¶ 18. As Judge Valle correctly noted, it would have been "unreasonable [for the Deputies] to conclude that evidence relevant to either of these charges might be found in the truck." R&R at 15. Because a search of the truck under these circumstances would violate "clearly established" law—as enunciated by the Supreme Court in *Gant*—the Deputies are not entitled to qualified immunity for this initial search at the scene.

The Deputies challenge this conclusion under what they describe as a fourth exception to

the warrant requirement—the kind of "Terry protective sweep" envisioned in *Michigan v. Long*, 463 U.S. 1032 (1983)—which, they say, justified the initial search at issue here. *See* Def. Objections at 3-6. In *Long*, the Supreme Court held that the Fourth Amendment "permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is dangerous and might access the vehicle to 'gain immediate control of weapons.'" *Gant*, 556 U.S. at 346 (quoting *Long*, 463 U.S. at 1049)). In addition, as the *Gant* Court explained, "there may be still other circumstances in which safety or evidentiary interests would justify a search." *Id*. (citing *Maryland v. Buie*, 494 U.S. 325, 334 (1990) (holding that, incident to arrest, an officer may conduct a limited protective sweep of those areas of a house in which he reasonably suspects a dangerous person may be hiding)). "These exceptions together ensure that officers may search a vehicle when genuine safety or evidentiary concerns encountered during the arrest of a vehicle's recent occupant justify a search." *Id*.

The Amended Complaint is admittedly less-than-clear on whether the unnamed passenger was arrested, whether he was considered a suspect, and whether he was secured when the Deputies conducted their search. *See* Def. Objections at 3-6. But, for several reasons, *Long* does not help the Deputies here. First, *Long* contemplated only searches of the "passenger compartment of an automobile." *Long*, 463 U.S. at 1048. Here, however, a fair reading of the Amended Complaint suggests that the Deputies searched *the entire vehicle*. *See* Am. Compl. ¶ 13 ("Defendants Augustus (CN 14942) and Metf [sic] (CN 11626) performed an unlawful search of plaintiff's vehicle against his protests."). Second, the *Long* exception is triggered only when the officers have reason to believe that "an individual, whether or not the arrestee, is dangerous." *Gant*, 556 U.S. at 346 (quoting *Long*, 463 U.S. at 1049). While the Deputies had probable cause to arrest Johnson for non-compliance with their instructions, there is nothing in the Amended Complaint—or in the

record—to support the Defendants' view that either Johnson or his passenger was "dangerous." Indeed, the Deputies do not appear to have treated the unnamed passenger as a suspect and, it seems, never arrested him—undermining their contention that they reasonably feared he might "become hostile and aggressive towards the Deputies" after Johnson was secured. Def. Objections at 6. Third, the *Long* exception hinges to a substantial degree on the capacity of the individual to "access the vehicle to 'gain immediate control of weapons.'" *Long*, 463 U.S. at 1049. In *Long*, for instance, the officers had already "observed a large hunting knife on the floorboard of the [open] driver's side of the car"—an observation that led them to "search for other weapons." *Id.* at 1036 (citation omitted). But the Amended Complaint never suggests that the Deputies observed any kind of weapon in plain view. Nor does it give any other reason to believe that a search of the truck might uncover such a weapon. *Long*, in short, does not help the Deputies here.

The Defendants are therefore not entitled to qualified immunity for the initial search of the truck. For this reason, their Motion to Dismiss Counts I and II of the Amended Complaint, as they relate to that search, is **DENIED**.

### ii.     The Second Search: The Inventory Search Exception

Johnson also alleges that, to further the "scheme" to violate his constitutional rights, the Deputies "seized his vehicle [and] . . . it placed in police custody for further unlawful searching." Am. Compl. ¶ 19. Johnson does not explain how he came to discover this information, but the allegations of his Amended Complaint suggest that his truck was first impounded and later subjected to an inventory search. *Id.*

Inventory searches are permissible under the Fourth Amendment if they: (1) protect the owner's property while it remains in police custody; (2) protect the police against claims or disputes over lost or stolen property; or (3) protect the police from potential danger. *United States*

*v. Handy*, 592 F. App'x 893, 906 (11th Cir. 2015). But the Defendants bear the burden of establishing that the exception applies. *Id.* And the validity of an inventory search "depends on the legality of the decision to impound the vehicle." *Id.* at 907. While that decision is discretionary, it "must be made according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 906. The purpose of objective criteria is to "limit officer discretion in the decision to impound a vehicle . . . so that cars [are] impounded and searched only if called for by the police department's standard operating procedures . . . and not to discover evidence." *United States v. Skinner*, 957 F. Supp. 228, 232 (M.D. Ga. 1997).

As Judge Valle noted, there is no evidence at this stage of the case that might explain *why* Johnson's truck was impounded and searched. R&R at 16. Nor at this point—and without reviewing the Defendants' policies on vehicle searches and impoundments—can the Court say whether the Defendants' decision to impound the truck and inventory its contents was reasonable within the strictures of the Fourth Amendment. And, since the Amended Complaint avers that the traffic stop occurred at Johnson's home, *see* Am. Compl. ¶¶ 8-9, there is no plausible argument that, by not impounding the truck, the Deputies would have brought about some public safety concern. *See* Pl. Objections at 6-7.

The Defendants object to this portion of the R&R on three grounds. *First*, they say, Johnson "never asserts that a search actually took place, or specifically, that the Deputies themselves conducted a search of his vehicle . . ." *Id.* at 8. But the Amended Complaint unambiguously alleges that, "[u]pon [] returning [] to his residence, the plaintiff discovered that the defendants [had] . . . seized his vehicle . . . for further unlawful searching." Am. Compl. ¶ 19. And the Court must, at this early stage, accept the Amended Complaint's well-pled allegations as true. *See Brooks*, 116 F.3d at 1369. *Second*, citing *Handy*, the Deputies argue that their "decision to impound and the

method chosen for implementing that decision were, under all the circumstances, within the realm of reason." Def. Objections at 10. (quoting *Handy*, 592 F. App'x at 906). But, as the R&R explains, *Handy* requires the Deputies to defend their decision by pointing to one of three well-established inventory-search justifications. R&R at 15. And, putting aside their conclusory assertions about the reasonableness of their decision, the Deputies have not shown that they inventoried the truck for any of these three permissible purposes. They have not, in short, explained why Johnson's car—which, according to the Amended Complaint, was parked on Johnson's own property—had to be impounded and searched to protect (1) Johnson's valuables; (2) the police from claims of theft; or (3) the police from some public danger. *Handy*, 592 F. App'x at 906. This failure is fatal to their second objection. *Third*, and relatedly, the Deputies contend that, because Johnson "has not alleged that his vehicle was in a location that did not impede traffic or threaten public safety," their decision to impound was per se reasonable. *See* Def. Objections at 10. But, again, the Amended Complaint alleges that the entire "incident" occurred within the "parking area" of Johnson's "residence." Am. Compl. ¶ 9. And, in adjudicating a motion to dismiss, the Court must accept the Amended Complaint's well-pled allegations as true. *See Brooks*, 116 F.3d at 1369.

The Defendants, in sum, are not entitled to qualified immunity for the inventory search of the truck. For this reason, their Motion to Dismiss Counts I and II of the Amended Complaint, as they relate to that second search, is **DENIED**.

### iii.    A Final Word on The Searches

Although the Court has denied the Defendants' request for qualified immunity on the two searches, the Court acknowledges the Defendants' frustration with the sparsity of the Amended Complaint's allegations—particularly as they relate to those two incidents. Because he will have an opportunity to file a Second Amended Complaint, the Court admonishes Johnson to use that

pleading to describe with greater specificity the circumstances of each search, including: (1) whether he was handcuffed or otherwise secured when the Deputies began their initial search; (2) where precisely he was seated when the search occurred; (3) whether the unnamed passenger was similarly handcuffed or secured during the search; (4) where the unnamed passenger was seated when the search occurred; (5) Johnson's relationship with the unnamed passenger; (6) whether the unnamed passenger was ever detained, arrested, or considered a suspect; (7) whether, during the initial search, the Deputies searched the whole truck or only its passenger compartment; (8) how he learned about the inventory search; and (9) any other information he might have about why his truck was impounded and inventoried. The Court hereby warns Johnson that his failure to fill in these salient details may result in the dismissal of these allegations.

### E. The Official Capacity Claims Against the Defendants

Johnson levies claims against all three Defendants in their official capacities. *See* Am. Compl. ¶¶ 2 (Israel), 3 (Augustus), 4 (Metz). But § 1983 suits against public officials *in their official capacities* are simply suits against the municipal entities those public officials represent. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n. 2 (1997). And, as the Supreme Court has explained, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694 (cleaned up).

Johnson never alleges that the two Deputies formulated an unconstitutional policy—or advanced an unconstitutional custom or practice—on the BSO's behalf. Nor does he suggest that

they had the authority to do so. In this respect, Johnson appears to assert his *Monell* claim only against Sheriff Israel. Accordingly, Johnson's official capacity claims against the Deputies are **DISMISSED without prejudice**.

Johnson likewise does not allege that Sheriff Israel formulated an official unconstitutional *policy*. Rather, in making an unofficial *custom* claim, he says the Sheriff "[knew] of the history of [the police force's] abuses, in terms of his agent's unlawful acts of stopping pedestrians and/or citizens, either walking and/or driving . . . for the sole purpose of violating the rights of those individuals, [which] makes [Sheriff Israel] liable for the acts of his agents . . ." Am. Compl. ¶ 22. In support, Johnson "summarily" describes three lawsuits he claims have been filed in the Southern District of Florida against Sheriff Israel for "false arrest." Am. Compl. at 16. From these three lawsuits, Johnson infers that Sheriff Israel has a "de facto" policy of covering up police misconduct by failing to investigate that misconduct properly. *Id*. But these unsubstantiated lawsuits do nothing to advance Johnson's *Monell* claim: the first was *dismissed* because of the plaintiff's failure to respond to court orders; the second settled mid-trial—without any admission of liability by the Sheriff; and the third resulted in a verdict *for the defendant-officer* who, the jury found, *had* probable cause to arrest the plaintiff. *See* R&R at n.11. Not one of these cases, then, evinces any kind of unofficial policy or custom by either Sheriff Israel or the BSO of "stopping pedestrians and/or citizens, either walking and/or driving . . . for the sole purpose of violating the rights of those individuals . . . ." Am. Compl. ¶ 22.

That leaves only Johnson's single, isolated "allegation[] of an unlawful stop, arrest, seizure, and searches of property by the Deputies" in this case—which, as Judge Valle correctly noted, is "insufficient to show the type of persistent and widespread policy necessary to confer municipal liability on the Broward Sheriff's Office through Defendant Sheriff Israel." R&R at 20-21; *see*

*Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) (random acts or isolated incidents are generally insufficient to establish a *Monell* custom or practice).

Johnson's Objections do nothing to change this result. To begin with, most of his Objections do little more than repeat the same arguments he raised in his MTD Response. In this way, they are procedurally improper. *See Holland v. Colvin*, No. 4:14-CV-194-VEH, 2015 WL 1245189, at *3 (N.D. Ala. Mar. 18, 2015) (in objecting to an R&R, a party may not simply restate the same arguments it presented to the magistrate judge) (citing *VanDiver v. Martin,* 304 F. Supp. 2d 934, 937-938 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented[,] is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.")). In any event, the Court finds wholly unpersuasive Johnson's remaining Objection—that his allegations concerning the mere filing of three false-arrest lawsuits against Sheriff Israel, standing alone, suffice to establish an unofficial, widespread, and unconstitutional policy of effectuating false arrests. After all, only two of these lawsuits actually asserted a false arrest claim. And not one resulted in any determination of illegality or wrongdoing. A lawsuit is an accusation—nothing more.

Johnson's official capacity claim against Sheriff Israel is therefore **DISMISSED without prejudice**.

## F. Count III: The Individual Capacity Claim Against Sheriff Israel

In Count III of his Amended Complaint, Johnson asserts a § 1983 claim against Sheriff Israel in his individual capacity. But it "is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of

*respondeat superior* or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir.1994)). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir.1998). Supervisors "can be held liable under § 1983 when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiffs, and his conduct was causally related to the constitutional violation committed by his subordinate." *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir.1990) (citations and footnote omitted). "Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Braddy*, 133 F.3d at 802 (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990)).

This causal connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," *id.*, or when the supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671 (citations omitted). "A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at 1235 (citing *Post*, 7 F.3d at 1561).

Johnson makes none of these allegations here—at least not plausibly. In particular, he never

suggests that Sheriff Israel was personally involved in the incidents of November 22, 2013, or that he "directed the [Deputies] to act unlawfully." *Id*. And, because he has pled no other instances of similar police misconduct, he has not established "a history of widespread abuse" that might "put[] the responsible supervisor on notice of the need to correct the alleged deprivation." *Braddy*, 133 F.3d at 802. Nor, lastly, has he shown any "custom or policy [that] resulted in deliberate indifference to constitutional rights." *Rivas*, 940 F.2d at 1495. For all these reasons, Johnson's individual capacity claim against Sheriff Israel is **DISMISSED without prejudice**.

### G. Johnson's Claim for Punitive Damages Against the Deputies

Finally, Johnson seeks $1 million in punitive damages against each deputy. *See* Am. Compl. at 19. While punitive damages are not available for *official* capacity claims under § 1983, they are available for *individual* capacity claims. *See* R&R at 24-25 (citing cases). But, to prevail on his claim for punitive damages, Johnson will have to establish the Defendants' "malicious intent, evil motive, or reckless or callous disregard for the rights and safety of others." Def. Objections at 11 (citing *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986)). As the R&R wisely concluded, it would be premature to strike Johnson's punitive damages claim so early in the case—in particular because of the scarce record evidence on the two searches and the reality that it "remains uncertain whether any claims against the Deputies in their individual capacities would ultimately survive." R&R at 25.

\*\*\*

Having carefully reviewed the record, the Court hereby

**ORDERS AND ADJUDGES** that Judge Valle's R&R [ECF No. 47] is **ADOPTED IN FULL**. The Defendants' Motion to Dismiss [ECF No. 37] is **GRANTED in part and DENIED in part** as follows:

1. Johnson's *Monell* claims against the Defendants in their official capacities are **DISMISSED without prejudice**.

2. Johnson's claims that the Deputies, in their individual capacities, unconstitutionally stopped and arrested him, as alleged in Counts I and II of the Amended Complaint, are **DISMISSED without prejudice**.

3. Johnson's claims that the Deputies, in their individual capacities, unconstitutionally searched his truck, as alleged in Counts I and II of the Amended Complaint, shall **REMAIN**. That said, in his Second Amended Complaint, Johnson *must* plead additional facts as discussed in this Order regarding the contours of the two searches.

4. Johnson's claims against Sheriff Israel in his individual capacity are **DISMISSED without prejudice**.

5. Johnson's claims for punitive damages against the Defendants in their official capacities are **STRICKEN**.

6. Johnson's claim for punitive damages against the Deputies in their individual capacities shall **REMAIN**.

7. Johnson shall file a Second Amended Complaint within **21 days** of this Order. That Second Amended Complaint shall address the substantive deficiencies discussed in both the R&R and this Order. Johnson's failure to file a Second Amended Complaint by **March 25, 2020** will result in dismissal of this case *with prejudice*. Moreover, Johnson will not be given another bite at the apple. If, on a subsequent motion to dismiss, the Court dismisses Johnson's claims again, that dismissal will be *with prejudice*.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 4th day of March 2020.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record